IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ALBI FURXHIU, <br><br> Defendant. | CRIMINAL ACTION <br> NO. 24-224 |

<u>OPINION</u>

**Slomsky, J.**                                                                                                     **July 31, 2024**

I.   **INTRODUCTION**

Before the Court is Defendant Albi Furxhiu's Appeal of the United States Magistrate Judge's Order of Detention Pending Trial pursuant to 18 U.S.C. § 3145(b).  (Doc. No. 14.)  On June 13, 2024, the Government filed a Motion for Pretrial Detention (Doc. No. 10), and on June 17, 2024, a hearing was held before United States Magistrate Judge Carol Sandra Moore Wells.  (Doc. No. 13.)  At the hearing, Judge Wells granted the Government's Motion for Pretrial Detention.  (See <u>id.</u> at 1.)

On June 18, 2024, Defendant filed his Appeal of the Magistrate Judge's Order of Detention Pending Trial (the "Appeal") (Doc. No. 14), seeking revocation of the Detention Order and release from custody pending trial.  (<u>Id.</u>)  In his Appeal, Defendant alleges that pretrial release is warranted because he is not a flight risk nor a danger to the community.  (See <u>id.</u> at 1.)  On June 18, 2024, the Government filed a Response in Opposition to Defendant's Appeal.  (Doc. No. 15.)  On July 17, 2024, the Court held a hearing on the Appeal, during which Defendant presented testimony from his family and friends and the parties presented arguments in support of their respective positions.  (<u>See</u> Doc. No. 17.)  For reasons that follow, the Court will grant Defendant's request for release from custody pending trial with strict bail conditions imposed.

1

## II.     BACKGROUND

### A. Robberies on March 5, 6 and 11

The Government alleges that Defendant engaged in three armed robberies in Philadelphia from March 5, 2024 to March 11, 2024. (See Doc. No. 15 at 4-6.) The first robbery occurred on the morning of March 5, 2024 when an individual robbed a Sunoco gas station by pointing a semi-automatic handgun at the cashier. (Id. at 4.) The perpetrator fled the scene on foot with approximately $4,000. (Id.)

The second robbery occurred the following day. (Id. at 5.) On March 6, 2024, an individual robbed a 7-11 convenience store by pointing a gun at the cashier and demanding money from the cash register. (Id.) The perpetrator fled on foot with approximately $2,000 in cash. (Id.)

The final robbery occurred on March 11, 2024. (Id. at 6.) This robbery began with the perpetrator entering a TD Bank and pointing a firearm at an unarmed security guard. (Id.) The perpetrator then demanded money from a bank teller and yelled for everyone else in the bank to get on the ground. (Id.) The teller filled a brown paper bag with $1,819 and a GPS tracking device. (Id.) After receiving the money, the perpetrator fled the bank southbound on the 2700 block of Randolph St. (Id.)

### B. Investigation of the Robberies

According to the Government, detectives obtained evidence linking Defendant to all three robberies. First, detectives recovered surveillance videos from all three stores allegedly showing Defendant committing the robberies and driving a white Ford Connect Transit van. (Id. at 7.) Second, after the March 11, 2024 bank robbery, law enforcement located the GPS tracking device that was placed in the bag of stolen money. (Id.) The GPS device and $20 bills were found in a sewer on the south side of Bigler St. and S. Alder St. (Id.) The Government avers that one of

2

Defendant's residences—2848 S. Alder St.—is located directly across from this sewer.  (Id.)

Next, law enforcement was alerted that a resident at 2848 S. Alder St. had been observed driving a white Ford transit van similar to the one seen at the bank robbery.  (Id. at 9.)  On March 13, 2023, after Philadelphia Police Officer Zirilli witnessed Defendant entering and driving the van, he conducted a stop and investigation of the van.  (Id.)  At the time of the stop, Defendant was carrying a black FNH FNP-45, .45 caliber semiautomatic pistol bearing serial number 61DZM04305 ("FNH FNP-45 firearm"), loaded with 14 live rounds on his right hip, which he gave to Officer Zirilli.  (Id.)  Next, Detectives arrived and spoke with Defendant.  (Id.)

Defendant told the Detectives that he had just left 1902 Jessup St. and was driving to pick up his son from daycare.  (Id.)  Based on this information, the Detectives went to 1902 Jessup St. and spoke with Defendant's mother.  (Id. at 10.)  Detectives showed her a still image of the robber taken during the Sunoco robbery, and she identified Defendant as the person in the photo.  (Id.)  Detectives also determined that Defendant had a valid license to carry the FNH FNP-45 firearm found on his person at the traffic stop, and it matched the description from the gun used in the Sunoco robbery.

After being advised and apparently waiving his Miranda rights, Defendant provided an audio and video recorded statement to Detectives.  (Id.)  The Government alleges that in his statement, he admits to committing the three robberies with his FNH FNP-.45 caliber firearm.  (Id. at 11.)  Thereafter, law enforcement officers executed search warrants for 2848 S. Alder St., for 1902 Jessup St. and for the white Ford Connect Transit van and found clothing similar to the

3

clothes worn by the robber in the surveillance videos. They also found additional guns and ammunition.[1] (Id.)

On March 14, 2024, Philadelphia Police arrested Defendant for committing the three robberies. (Doc. No. 14 at 2.) He was initially charged with state offenses. At his first preliminary hearing held on April 1, 2024, Defendant's bail was reduced. On April 2, 2024, he posted bail and was released to house arrest. (Id.)

On June 11, 2024, Defendant was indicted in the Eastern District of Pennsylvania on the following federal charges which cover the events that occurred on March 5, 6 and 11, 2024: two counts of robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951; one count of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and two counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. No. 1.) On June 12, 2024, while attending a court hearing on his state charges, Defendant was arrested on a federal warrant issued with the filing of his federal Indictment. (See Doc. No. 19 at 5; Doc. No. 6 at 1.) He currently remains in federal custody at the Federal Detention Center in Philadelphia. (See id.)

On June 13, 2024, the Government filed a Motion for Pretrial Detention. (Doc. No. 10.) On June 17, 2024, Magistrate Judge Wells held the hearing on the Motion. (See Doc. No. 12.) At the hearing, Judge Wells granted the Motion:

> Based on the facts presented here and in the indictment, I generally would detain such an individual. So I was listening today to hear what special reason makes this individual not a danger to the community. I believe he will show up. He doesn't want his brother to lose all his properties. But I'm also looking at someone who is a gambling addict who had three restaurants, who sold them, allegedly because his wife committed suicide. I'm not hearing that as a reason you go on a crime spree or

---

[1] Specifically, the search of 1902 S. Jessup St. yielded a blue jacket similar to the one worn by the robber during the 7-11 robbery. (Id.) The search of the white Ford Transit Van yielded a blue, red and black Champion winter hat and blue medical mask. (Id.)

4

having a disjoint here . . . It might have been the trigger --. . . –however, I don't think that's an excuse or a valid reason ---- to put people in jeopardy, put [sic] guns at them and steal money from them. I have a problem.  I'm ordering that you be detained until the time of trial, or until you come up with some additional information or reason why you should be released. I find you are a danger to the community. I find that you would appear in court each and every time. You appeared in state court. You turned yourself in. You did all the things you're supposed to do in that regard. I don't believe --  time has not shown me that you're safe to put back out in the public. I'm ordering you detained until the time of your trial.

(Doc. No. 19 at 12:14-13:18.)

On June 18, 2024, Defendant filed an Appeal of the Magistrate Judge's Decision (Doc. No. 14) requesting this Court to grant pretrial release on bail with strict conditions.  (See id.)  In his Appeal, Defendant argues that he has rebutted the statutory presumption in favor of detention arising from a gun charge and should be released pending trial because he is neither a flight risk nor a danger to the community, as evidenced by his strong family support, ties to the community and lack of a criminal history.  (See id. at 2-3.) On June 21, 2024, the Government filed a Response in Opposition to the Motion.  (Doc. No. 15.)  The Government argues that Defendant should not be released pending trial because he has failed to rebut the statutory presumption and remains a danger to the community and a flight risk.  (Id. at 2.)  In support of its position, the Government cites the nature of the charges, the mandatory minimum penalties he faces, Defendant's actions, and the strength of the evidence.  (See id. at 4-16.)  As noted, on July 17, 2024, the Court held a hearing on the Appeal, during which Defendant offered a number of witnesses and the parties presented arguments in support of their respective positions.  (See Doc. No. 17.)

**III.    JURISDICTION**

In his Motion, Defendant appeals Magistrate Judge Well's June 17, 2024 Detention Order. (Doc. No. 30.)  This Court has jurisdiction to review the Magistrate Judge's Detention Order under 18 U.S.C. § 3145(b).  Section 3145(b) "requires this Court to make a de novo determination of the

5

findings of fact underlying the detention [o]rder." United States v. Cole, 715 F. Supp. 677, 677 (E.D. Pa. 1988) (citing United States v. Delker, 757 F.2d 1390, 1394 (3d Cir. 1985)).

### IV.  LEGAL STANDARD

Pretrial detention of federal defendants is controlled by the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. In this Act, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. One precept is that persons must be released so long as the court can be reasonably assured that they do not pose a flight risk or danger to the community. See 18 U.S.C. § 3142(b). To that end, detention is the exception; and to the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released. See § 3142(c). In assessing what, if any, conditions can be fashioned, courts are directed to consider the factors enumerated in § 3142(g) and the statutory presumptions contained in § 3142(e).

Pursuant to 18 U.S.C. § 3142(e)(1), a defendant may be detained pending trial:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community . . . .

§ 3142(e)(1). Furthermore:

> Subject to rebuttal by [a defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that [a defendant] committed–
>
> (B) an offense under section 924(c), 956(a), or 2332b of this title;

§ 3142(e)(3)(B). To rebut the presumption of detention dictated by Title 18 U.S.C. § 3142(e)(3)(B), "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." United States v.

Carbone, 793 F.2d 559,560 (3d Cir. 1986). "If the defendant rebuts the presumption, the burden of persuasion remains with the government." Chagra, 850 F.Supp. at 357 (citing United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985)). The Government is then required to prove (1) that the defendant poses a flight risk by a preponderance of the evidence; or (2) that the defendant is a danger to the safety of any other person and the community by clear and convincing evidence. United States v. Kolonis, No. 2:20-cr-146, 2020 WL 5253192, *3 (W.D. Pa. Sept. 3, 2020). As a final note, 18 U.S.C. § 3142(j) states that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence."

**V.     DISCUSSION**

As noted above, Defendant is charged in the Indictment with; (1) two counts of robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951; (2) one count of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and (3) two counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. No. 1.) The two counts of brandishing a firearm during and in relation to a crime of violence are offenses to which the rebuttable statutory presumption applies "that no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of the community . . . ." 18 U.S.C. § 3142(e)(3). The statutory presumption therefore is triggered, and the burden shifts to Defendant to rebut this presumption. See id.; United States v. Levy, No. 08-393, 2008 WL 4978298, at *1 (E.D. Pa. Nov. 20, 2008) ("[A defendant] subject to the statutory presumption against bail . . . . b[ears] the burden of providing countervailing evidence supporting his pretrial release.").

Rebuttal evidence Defendant may put forward includes "'testimony by coworkers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health,

7

or family situation,' or evidence of steady employment." Levy, 2008 WL 4978298, at *1 (quoting United States v. Perry, 788 F.2d 100, 115 (3d Cir. 1986)); see also United States v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986). Defendant may also proceed by proffer. See Suppa, 799 F.2d at 118 (citing Delker, 757 F.2d at 1390; 18 U.S.C. § 3142(f)). No single factor or combination of factors is dispositive. See Levy, 2008 WL 4978298, at *1. The ultimate determination on this issue is for the court, "based on all evidence and arguments adduced." Id. (citing Suppa, 799 F.2d at 118-19). Regarding Defendant's rebuttal evidence, it must be considered in light of certain factors, including: (1) the nature and circumstances of the offenses charged, including whether the offenses involve drugs or firearms; (2) the weight of the evidence against Defendant; (3) the history and characteristics of Defendant; and (4) the nature and seriousness of the danger to the community that would be posed by Defendant's release. See id.; 18 U.S.C. § 3142(g).

Here, Defendant argues that he has overcome the statutory presumption because he is not a danger to the community or a flight risk. First, Defendant submits that he is not a danger to the community because he has no prior criminal history and, after his initial arrest, he has followed all the requirements of house arrest imposed by the state court judge, including seeking mental health, substance abuse and gambling addiction treatment. (Doc. No. 14. at 2.) Second, he argues that his strong community ties and family support show that he is not a danger to the community nor a risk of flight. (Id. at 2.) Specifically, he notes that he is the single parent of two young children after the suicide death of their mother, he previously owned a successful restaurant in South Philadelphia, and his family and friends will provide him with financial support and guidance as evidenced by the number of people who appeared at his Appeal hearing and provided testimony on his behalf. (Id. at 2-3.) Third, Defendant argues that he is not a flight risk, citing that his family

8

will post eight (8) properties with a value of over $1,000,000 to ensure his appearance in court.[2] (Id. at 3.) As noted, at the hearing on the Motion for Pretrial Detention held on June 17, 2024, Defendant had family and friends present in the courtroom to show their support. (See Doc. No. 19 at 2:24-3:21) ("the entire back row is comprised of people, friends and family members who are [Defendant's] supporters.") Moreover, he always appeared at state court proceedings in his criminal case.

In its Response, the Government argues that Defendant has not overcome the statutory presumption, contending that Defendant is a danger to the community and a risk of flight based on the nature of the charges and the potential penalties[3] he faces. (See Doc. No. 15 at 1.) The Government argues that even though Defendant has no prior criminal history and a supportive family, the fact that "on three separate occasions he went into businesses in Philadelphia, pulled out a loaded firearm, threatened citizens with it, and took money" warrants pretrial detention. (Id. at 14.) Specifically, the government avers that "[t]o the extent the defendant has family ties,

---

[2]  The properties his brother, Florian Furxhiu, has agreed to post are:

      1. 2843 South Warnock Street, Philadelphia, PA;
      2. 217 Tasker Street, Philadelphia, PA;
      3. 1540 Down Street, Media, PA;
      4. 1520 McKean Street, Philadelphia, PA;
      5. 2833 South Warnock Street, Philadelphia, PA;
      6. 2848 South Alder Street, Philadelphia, PA;
      7. 934 Mountain Street, Philadelphia, PA;
      8. 1902 South Jessup Street, Philadelphia, PA.

(Id.)

[3]  Based on the offenses charged in the Indictment, Defendant faces a mandatory minimum penalty of 14 years' imprisonment, and a potential maximum sentence of lifetime imprisonment. (Doc. No. 1 at 14.)

previous employment, or other ties to the community, such alleged connections did not prevent his recent violent criminal behavior." (Id.)

Here, Defendant has overcome the statutory presumption in favor of detention resulting from his alleged use of a firearm during robberies which interfered with interstate commerce as charged in his Indictment. While the Court acknowledges the seriousness of the offenses charged, the ultimate determination on release must be "based on all evidence and arguments adduced." Levy, 2008 WL 4978298, at *1. Based on the evidence in the record, the Court is persuaded that it can be reasonably assured that Defendant will not be a danger to the community nor a flight risk when stringent bail conditions are imposed on Defendant.

First, with respect to danger to the community, although robbery is a serious crime which could lead to physical harm, Defendant, who is thirty-three (33) years of age and has no prior criminal history, alleges that the three robberies were "the result of severe trauma, depression, and substance abuse," triggered by the violent suicide of his children's mother in his presence.[4] (Doc. No. 14 at 5; Doc. No. 19 at 4:22-5:7.) In addition, Defendant is now sober, sought mental health and addiction treatment while on release during the state case, and had complied with all requirements of house arrest. (Doc. No. 14 at 5.) Further, the federal Pretrial Services Officer in this case recommended that Defendant be released with strict conditions. (Id.)

Second, with respect to the risk of flight, Magistrate Judge Wells found that there was no risk in this case. Defendant has strong family and community ties to the Philadelphia area. (Id. at 2-3.) He is a single parent of his two young children and previously owned a successful restaurant in South Philadelphia. (Id.) His family has offered to post as bail eight (8) properties with an

---

[4] At the July 17, 2024 hearing on Defendant's Appeal, several of Defendant's family members testified that Defendant was negatively affected by this suicide. Defendant's Pastor also spoke of this tragedy in a letter to the Court.

estimated value of over $1 million to ensure his appearance in court. (Id. at 3.) Finally, Defendant's counsel notes that "[t]he day [] [Defendant] was arrested . . . on the federal indictment, he was in [state] court as instructed on time with his mother and other family members who are in court today. That's another factor. We have a tremendous amount of support from the community." (Doc. No. 19 at 5:21-25.) Notably, at the July 17, 2024 hearing on Defendant's Appeal of the Magistrate Judge's Detention Order, twelve (12) members of Defendant's family spoke on his behalf. Defendant's brother, Florian Furxhiu testified that he was willing to put all the properties he owned up as collateral for Defendant, and if Defendant was released pending trial, Defendant could work at one of his restaurants during the day. See Transcript of Mtn. Hearing July 17, 2024. Other individuals that testified were: (1) Ardian Marini, Defendant's second cousin; (2) Eugene Galog, friend of fifteen years; (3) his mother; (4) his father; (5) Michael Guida, friend of twenty years; (6) Jessica Sasio, best friend of his late fiancé; (7) Jane, friend of eight years; (8) Tom Spira, friend of eight years and three additional witnesses whose names were not recorded on the trial transcript.

The Pretrial Services report, dated July 12, 2024, recommended that Defendant be released on a $100,000 unsecured bond with the following conditions:

1. Defendant shall report as directed to Pretrial Services

2. Defendant shall attend mental health services under the guidance and supervision of Pretrial Services.

3. Defendant shall submit to random drug testing as directed by Pretrial Services.

4. Defendant shall refrain from excessive use of alcohol or from any use of a narcotic drug or other controlled substance, as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. § 802, without a prescription by a licensed medical practitioner.

5. Defendant shall undergo drug/alcohol treatment, if necessary, as determined by Pretrial Services.

6. Defendant shall submit to location monitoring at the following address: 1902 South Jessup Street Philadelphia, PA 19148. Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer.

7. Defendant must surrender his passport to the Clerk of Court.

8. Defendant must refrain from applying for a passport.

9. Travel is restricted to the Eastern District of Pennsylvania.

10. Defendant shall surrender and/or refrain from obtaining any firearms.

11. Defendant shall have no contact with co-defendants, potential witnesses or victims in this case, or individuals engaged in any criminal activity.

12. Defendant must reside with his parents: Yilka and Andon Furxhiu and the defendant's two children at 1902 South Jessup Street Philadelphia, PA 19148.

This Court finds that given the applicable legal standards and all the evidence adduced in this case, these conditions, including home confinement with electronic monitoring, will reasonably assure that Defendant is not a danger to the community nor a flight risk.

## VI.   CONCLUSION

For the foregoing reasons, upon the Court's de novo review of the Magistrate Judge's Detention Order, the Court will grant Defendant's request for Pretrial Release (Doc. No. 14). An appropriate Order with the following conditions of bail will be issued. The conditions are as follows:

1. Defendant is released on bail in the amount of $250,000 to be secured by real property with a net fair market value of $250,000.[5]

2. Defendant shall report to U.S. Pretrial Services as directed by Pretrial Services.

---

[5] As previously discussed, Defendant's family has offered to post eight (8) properties to secure his bail. See fn. 2, supra. Because Defendant's bail will be set at $250,000, Defendant's family need only post as many properties as necessary to cover the overall amount of $250,000.

3. Defendant shall submit to random drug testing as directed by Pretrial Services.

4. Defendant shall refrain from excessive use of alcohol or from any use or unlawful possession of a narcotic drug or other controlled substance, as defined in Section 102 of the Controlled Substance Act, 21 U.S.C. § 802, without a prescription by a licensed medical practitioner.

5. Defendant shall undergo drug/alcohol/gambling treatment if necessary as determined and directed by Pretrial Services.

6. Defendant shall submit to location monitoring at the following address: 1902 South Jessup Street Philadelphia, PA 19148.

7. Upon Defendant's release from detention, Pretrial Services will attach a location monitoring bracelet on Defendant and any necessary equipment inside of his residence.

8. Defendant shall be restricted to 24-hour-a-day lockdown at his residence except for medical necessities and court appearances or other activities specifically approved by the Court.

9. Defendant shall surrender his passport to the Clerk of Court.

10. Travel is restricted to the Eastern District of Pennsylvania.

11. Defendant must surrender his passport and refrain from applying for an additional passport.

12. Defendant shall surrender and/or refrain from obtaining or possessing any firearms or other weapons. Any other firearms in any premises where Defendant resides while under supervision must be removed from the premises and no firearms are to be brought into the premises during this period. Defendant shall execute a completed Probation on Possession of Firearms Agreement.

13. Defendant shall have no contact with codefendants, potential witnesses or victims in this case, or individuals engaged in criminal activity.

14. Defendant must reside at: 1902 South Jessup Street Philadelphia, PA 19148 with his parents: Yilka and Andon Furxhiu and Defendant's two children.

15. Defendant shall not commit a Federal, State, or local crime during the period of release. The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than 10 years, if the offense is a felony; or a term of imprisonment of not more than 1 year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

16. Any violation of the conditions of release shall result in revocation of bail, and imprisonment, pending trial.

An appropriate Order follows.